**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------
DR. DAVID SIMAI,
on behalf of Plaintiff and the class defined herein,

                Plaintiff,

   v.

DELIVER MY MEDS CORP., d/b/a
DELIVER MY MEDS PHARMACY,
and JOHN DOES 1-10,

                Defendants.
------------------------------------------------------------------

# COMPLAINT – CLASS ACTION

## INTRODUCTION

1. Plaintiff Dr. David Simai brings this action to secure redress for the actions of Defendants Deliver My Meds Corp., d/b/a Deliver My Meds Pharmacy; and John Does 1-10, in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

2. The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

## PARTIES

3. Plaintiff Dr. David Simai has offices in the Eastern District of New York, where he maintains telephone facsimile equipment that automatically prints incoming faxes on paper using toner/ ink.

4. Defendant Deliver My Meds Corp. is a New York corporation with principal

offices at 380 Oser Ave., Hauppauge, New York, 11788. It does business as Deliver My Meds Pharmacy, and operates a pharmacy.

5. John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §1331. *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 132 S. Ct. 740, 751-53 (2012).

7. Personal jurisdiction exists in that Defendants have committed tortious acts in New York by causing the transmission of unlawful communications into the state and are located in New York.

8. Venue in this District is proper for the same reason.

## FACTS

9. On July 15, 2020, Dr. David Simai received the unsolicited fax attached as Exhibit A on his facsimile machine.

10. Plaintiff is a doctor who has offices in the Eastern District of New York where he sees and treats patients on a regular basis.

11. Discovery may reveal the transmission of additional faxes as well.

12. The fax was sent by or at the direction of Defendants for the purpose of inducing Plaintiff to recommend Defendant Deliver My Meds Corp. to his patients.

13. The fax announces that "We are a full service retail pharmacy located in Hauppauge, NY that offers free same-day delivery to our patients."

14. The fax offers free COVID testing as an introduction to Defendant Deliver My Meds Corp.

15. The fax does not contain information on how to opt out of further faxes.

16. Defendants either negligently or wilfully violated the rights of Plaintiff and other recipients in sending the faxes.

2

17. Plaintiff had no prior relationship with Defendant Deliver My Meds Corp. and had not authorized the sending of fax advertisements to Plaintiff.

18. On information and belief, the fax attached hereto was sent as part of a mass broadcasting of faxes.

19. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

20. On information and belief, Defendants have transmitted similar unsolicited fax advertisements to at least 40 other persons in New York and others elsewhere.

21. There is no reasonable means for Plaintiff or other recipients of Defendants' unsolicited advertising faxes to avoid receiving illegal faxes. Particularly in the medical field, where fax machines are used for the secure transmission of confidential patient information, fax machines must be left on and ready to receive the urgent communications authorized by their owners.

22. Defendants' conduct caused recipients of their advertising to bear the cost thereof. This gave Defendants an unfair competitive advantage over businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing his ad, the fax broadcaster misappropriates the recipients' paper and ink. "Receiving a junk fax is like getting junk mail with the postage due". Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. 1st Sess.

## COUNT I – TCPA

23. Plaintiff incorporates ¶¶ 1-22.

24. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(c).

25. The TCPA, 47 U.S.C. §227(b)(3), provides:

> **Private right of action.**
>
> **A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**
>
> > **(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
> >
> > **(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
> >
> > **(C) both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

26. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of time, paper and ink or toner consumed as a result. Furthermore, Plaintiff's statutory right of privacy was invaded.

27. Plaintiff and each class member is entitled to statutory damages.

28. Defendants violated the TCPA even if their actions were only negligent.

29. Defendants should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

30. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of Defendant Deliver My Meds Corp, (d) promoting commercially available goods or services (d) where Defendants do not have evidence of consent or an established business relationship prior to the sending of the faxes.

31. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief, based on the generic nature of the fax, that there are more than 40 members of the class.

32. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether Defendants engaged in a pattern of sending unsolicited faxes;

    b. Whether the faxes are advertisements;

    c. The manner in which Defendants compiled or obtained the list of fax numbers;

    d. Whether Defendants thereby violated the TCPA.

33. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

34. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

35. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because it is not economically feasible to bring individual actions.

36. Numerous courts have certified class actions under the TCPA. *Holtzman v. Turza,* 08cv2014, 2009 WL 3334909, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill. Oct. 14, 2009), *aff'd in part, rev'd in part, vacated in part,* 728 F.3d 682 (7th Cir. 2013); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.* 2015 IL 118644, 48 N.E.3d 1060; *American Copper & Brass, Inc. v. Lake City Indus. Products, Inc.*, 757 F.3d 540, 544 (6th Cir. 2014); *In re Sandusky Wellness Center, LLC*, 570 Fed.Appx. 437, 437 (6th Cir. 2014); *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016); *Sadowski v. Med1 Online, LLC,* 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 27, 2008); *CE Design Ltd. v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.,* 679 F.Supp.2d 894 (N.D.Ill. 2010);

*Garrett v. Ragle Dental Laboratory, Inc.,* 10cv1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Hinman v. M&M Rental Center, Inc.,* 545 F.Supp.2d 802 (N.D.Ill. 2008); *G.M. Sign, Inc. v. Group C Communications, Inc.,* 08cv4521, 2010 WL 744262, 2010 U.S. Dist. LEXIS 17843 (N.D.Ill. Feb. 25, 2010); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La.App. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.,* 992 So.2d 510 (La.App. 2008); *Lampkin v. GGH, Inc.,* 146 P.3d 847 (Ok.App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.,* 203 Ariz. 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young,* 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.,* 293 Kan. 285, 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns, Inc.,* 306 S.W.3d 577 (Mo.App. 2010); *Lindsay Transmission, LLC v. Office Depot, Inc.,* 4:12cv221, 2013 WL 275568, 2013 U.S. Dist. LEXIS 9554 (E.D.Mo. Feb. 24, 2013).

37. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

    a. Actual damages;

    b. Statutory damages;

    c. An injunction against the further transmission of unsolicited fax advertising;

    d. Costs of suit;

    e. Such other or further relief as the Court deems just and proper.

*/s/ Adam J. Fishbein*
Adam J. Fishbein

Adam J. Fishbein

**ADAM J. FISHBEIN, P.C.**
735 Central Avenue
Woodmere, New York 11598
(516) 668-6945
fishbeinadamj@gmail.com


pro hac vice admission to be sought:

Daniel A. Edelman (IL 0712094)
Dulijaza (Julie) Clark (IL 6273353)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com


T:\37967\Pleading\Complaint_Pleading.WPD

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

*/s/ Adam J. Fishbein*
Adam J. Fishbein

**EXHIBIT A**





**Drive-up COVID-19 test collection available!**   **FREE**

To schedule an appointment visit
**DoINeedACovid19Test.com**

# FREE COVID TESTING
# 844-444-8811

380 Oser Ave.
Hauppauge NY 11788


DELIVER MY MEDS

Deliver My Meds Pharmacy

Hauppauge, NY

Phone number : (631) 323-6337 ext 207

Fax: (833) 329-6979

# Fax

| To:DAVID E. SIMAI, MD | From: Deliver My Meds Pharmacy |
|---|---|
| Fax:+15163742044 | Pages:2 |

**Comments:**

Deliver My Meds has begun FREE drive-up testing for COVID-19 with the help of HealthMart pharmacy and ETrueNorth. We are a full service retail pharmacy located in Hauppauge, NY that offers free same-day delivery to our patients.

Our drive-up testing will operate right outside of our 20,000 square foot facility with by-appointment, self-test kits.

We will provide the kits and guide patients through the process of testing and properly securing their test sample.

Patients will log on to DoINeedACovid19Test.com and complete a brief assessment and training. Patients are given a voucher to bring to the testing site after scheduling their appointment.

On the day of testing, patients will present their voucher and complete the testing process. After testing is complete, we will securely send off the samples to be tested and patients can access their test results online.

We think this service may be in the best interest for you, your staff, and patients. Our contactless service allows for less exposure in your office. Patients can make appointments easily online, and get their results in 3-5 days. Patients can come back for multiple tests with no additional cost.

Attached are some marketing materials to promote our service.

Thank You